15

LAW OFFICES OF MARY ELLEN TERRANELLA
Mary Ellen Terranella – State Bar No. 99272
609 Jefferson Street, Suite G3
Fairfield, California 94533
(707) 428-1778
Facsimile (707) 446-6777
Attorney for Debtors

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA
### Sacramento Division

In re

MICHAEL P. CORTEZ ) Case No. 17-24500-B-13J
ANTOINETTE A. CORTEZ )
 ) Chapter 13
 Debtor )
 ) Docket Control No. MET-1
 )
 ) **EXHIBITS IN SUPPORT OF**
 ) **OBJECTION TO CLAIM**
 )
 ) Date: January 9, 2018
 ) Time: 3:00 P.M.
 ) Courtroom: 32, 6th Floor
 ) Judge: Christopher D. Jaime

EXHIBIT A – Proof of Claim No. 5-2 of Navy Federal Credit Union

EXHIBIT B – Notice of Trustee's Sale

**Fill in this information to identify the case:**

Debtor 1    Michael Cortez
Debtor 2    Antoinette Cortez
(Spouse, if filing)
United States Bankruptcy Court    Eastern District of California
Case number:   17-24500

FILED
U.S. Bankruptcy Court
Eastern District of California
8/15/2017
Wayne Blackwelder, Clerk

# Official Form 410
# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | NAVY FEDERAL CREDIT UNION<br>Name of the current creditor (the person or entity to be paid for this claim)<br>Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br>NAVY FEDERAL CREDIT UNION<br>Name<br>PO BOX 3000<br>MERRIFIELD, VA 22119<br><br>Contact phone    800-336-3767<br>Contact email<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>**Where should payments to the creditor be sent?** (if different)<br>Name<br><br>Contact phone<br>Contact email |
| 4. Does this claim amend one already filed? | ☐ No<br>☑ Yes. Claim number on court claims registry (if known)   5    Filed on 08/08/2017<br>                                                                                                                            MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? |

EXHIBIT A

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 0935 |
|---|---|
| 7. How much is the claim? | $ 75406.41  **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>MORTGAGE DEFICIENCY BALANCE |
| 9. Is all or part of the claim secured? | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ _____<br>**Amount of the claim that is secured:** $ _____<br>**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) _____ %<br>☐ Fixed<br>☐ Variable |
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No <br> ☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    8/15/2017
                    MM / DD / YYYY

/s/ Jacquelyn T. Musser

Signature

Print the name of the person who is completing and signing this claim:

Name: Jacquelyn T. Musser
       First name  Middle name  Last name

Title: Bankruptcy Specialist

Company: Navy Federal Credit Union
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: P.O. Box 3000
         Number Street
         Merrifield, VA 22119
         City State ZIP Code

Contact phone: 800-336-3767    Email

# HOME EQUITY LINE TRUTH-IN-LENDING AND AGREEMENT

Loan Number:    .0935

Name and Address of Borrower(s):
MICHAEL P CORTEZ
ANTOINETTE CORTEZ
901 INNISFREE CT
VALLEJO, CA  94591

Name and Mailing Address of Credit Union:
NAVY FEDERAL CREDIT UNION
Equity Lending
P.O. BOX 3327
MERRIFIELD, VA 22119-3327

"You" means each borrower above, jointly and severally.

"We" or "us" means the Credit Union named above.

| | |
|---|---|
| Date: | **January 24, 2007** |
| HEL Acct. #: | )935 |
| Line of Credit: $ | 110,000.00 |
| Type of HEL: | Standard |
| Initial Advance: $ | Zero |
| Minimum Advance: $ | 100.00 |
| Draw Period: | 15 years |
| Repayment Period: | Variable |
| Maturity Date: | February 01, 2027 |

**GENERALLY:** This is an agreement about your home equity line of credit. Many of the terms we use in this agreement have special meanings. The term "loan account balance" means the sum of the unpaid principal of loans made under this plan, plus unpaid but earned finance charges. The number for this Home Equity Line account is listed at the top of this form on the line labeled "HEL Acct. #." "Line of Credit" means the maximum amount of principal we will ordinarily allow you to owe us under this plan at any time.

In addition, we will use the following terms for this home equity plan: "Initial Advance" means the amount of money you accept as an advance to open the plan. "Minimum Advance" means the smallest amount of money we will advance to you at your request.

The "Draw Period" is the time during the plan that you may request advances and will make payments on your loan account balance. The "Repayment Period" is the time during the plan that you must repay your loan account balance but may not request further advances. The length of the repayment period will depend on the balance outstanding at the beginning of it. Except where otherwise indicated, the regulatory disclosures contained in this agreement apply to both the draw and repayment periods.

If any term of this agreement violates any law or for some other reason is not enforceable, that term will not be part of this agreement. This agreement is subject to the laws of **CALIFORNIA**    and applicable federal law.

**TAX DEDUCTIBILITY:** You should consult a tax advisor regarding the deductibility of interest and charges under this home equity plan.

**REQUESTING A LOAN:** You request a loan under this plan whenever you:
- write a special check we will provide for at least the minimum advance listed above.

**HOW THE LOAN IS ADVANCED:** When you request a loan, we will, subject to any limitations contained in this agreement, advance exactly the amount you request, so long as the requested amount equals or exceeds the minimum advance listed above. You can obtain an Advance by writing a HOME EQUITY LINE check for the amount of the Advance to a third party or by cashing a check at an NFCU branch office. We will record the amount as a loan in your loan account.

If your request is for less than the minimum advance, we may, at our option, grant the request. However, granting the request does not mean we will be required to grant requests for less than the minimum advance in the future. We always have the option to deny any such request.

However, we will not ordinarily grant any request for a loan which would cause the unpaid principal of your loan account balance to be greater than the Line of Credit listed above. We may, at our option, grant such a request without obligating ourselves to do so in the future.

**FINANCE CHARGE:** Each Advance made under your HOME EQUITY LINE Account will be subject to a monthly FINANCE CHARGE beginning on the date an Advance is first posted to your Account. A FINANCE CHARGE will continue to be assessed on your HOME EQUITY LINE Account until the entire outstanding balance is paid off.

The monthly FINANCE CHARGE is calculated by multiplying the "Daily Periodic Rate" by the "Average Daily Balance" in your Account and multiplying that amount by the number of days in the Billing Cycle. To get the "Average Daily Balance," we take the beginning balance in your Account each day, add any new Advances made and any fees charged to the Account and subtract any payments or credits and any unpaid finance charges. This gives us the daily balance. Then we add up all the daily balances for the Billing Cycle and divide the total by the number of days in the Billing Cycle. This gives us the "Average Daily Balance."

The "Daily Periodic Rate" is equal to the ANNUAL PERCENTAGE RATE divided by 365.25. The ANNUAL PERCENTAGE RATE is a variable rate which may increase or decrease on the first day of the first Billing Cycle in each calendar quarter based upon changes in the Prime Rate. The ANNUAL PERCENTAGE RATE applied to the Account during any Billing Cycle will equal ZERO percentage points (0) per annum in excess of the Prime Rate in effect on the first business day of the calendar quarter in which the Billing Cycle began. The initial Daily Periodic Rate is 0.01780 % and the corresponding ANNUAL PERCENTAGE RATE is 6.500 %. The ANNUAL PERCENTAGE RATE does not include costs other than interest.

"Prime Rate" is, as of any date, the prime rate of interest published for such date in the "Money Rates" section of the *Wall Street Journal*. If more than one prime rate is published in the "Money Rates" section of the *Wall Street Journal* on a given date, the "Prime Rate" will be the lowest prime rate published for that date. The ANNUAL PERCENTAGE RATE will decrease or increase on the first day of the first Billing Cycle in each calendar quarter during the term of this transaction if the Prime Rate published by the *Wall Street Journal* increases or decreases. However, the maximum ANNUAL PERCENTAGE RATE will never exceed 18%. A maximum rate lower than 18% may be established, if required by the Federal Credit Union Act or other applicable law or regulation. Any increase in the ANNUAL PERCENTAGE RATE will result in an increased FINANCE CHARGE and may result in an increase in the amount of your monthly payment, and any decrease in the ANNUAL PERCENTAGE RATE will result in a decreased FINANCE CHARGE and may result in a decrease in the amount of your monthly payment.

If at some point in the future the Prime Rate is no longer available, NFCU may change the margin and will use an alternative index which has a historical movement substantially similar to the Prime Rate and which, when added to the margin, will result in an Annual Percentage Rate that is substantially similar to the rate in effect at the time the Prime Rate becomes unavailable.

The method of determining the FINANCE CHARGE and the ANNUAL PERCENTAGE RATE is the same whether the loan is in the Draw Period or Repayment Period.

**HOW YOU REPAY YOUR LOANS - DRAW PERIOD:** On or before each payment date during the draw period, you agree to make a minimum payment. The minimum payment amount is the greater of: 1.5% of the New Balance shown on your monthly statement, $100.00, or the amount of the accrued finance charges. For Interest Only Home Equity Lines, the minimum payment is the amount of accrued finance charges.

**PRINCIPAL REDUCTION:** During the draw period the minimum payment may not fully repay the principal that is outstanding on your line. For Interest Only Home Equity Lines, during the draw period the minimum payment will not reduce the principal outstanding on your line.

**HOW YOU REPAY YOUR LOANS - REPAYMENT PERIOD:** On or before each payment date during the repayment period, you agree to make a minimum payment. The minimum monthly payment will be an amount equal to the greatest of: (a) two and one-half percent (2.5%) of the New Balance shown on your monthly statement at the time the Draw Period terminates, (b) accrued finance charges, or (c) one hundred dollars ($100.00) or the remaining balance if less than $100.00. For Interest Only Home Equity Lines, the minimum monthly payment will be an amount equal to one and three quarters percent (1.75%) of the New Balance shown on your monthly statement at the time the Draw Period terminates.

**FINAL PAYMENT:** On the maturity date listed above, you must pay the amount of any remaining loan account balance outstanding. The minimum payments may not be sufficient to fully repay the principal that is outstanding on your line. If they are not, you will be required to pay the entire outstanding balance in a single balloon payment.

We are not obligated to refinance your loan at that time, but will consider your request to do so. If you refinance this account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

**ADDITIONAL REPAYMENT TERMS:** If your loan account balance on a payment date is less than the minimum payment amount, you must pay only the loan account balance.

You can pay off all or part of what you owe at any time. However, so long as you owe any amount you must continue to make your periodic minimum payment.

The amounts you pay will be applied first to any charges you owe other than principal and finance charges, then to any finance charges that are due, and finally to principal.

**ROUNDING RULE:** The minimum payment will be rounded down to the nearest $1.00.

**SECURITY:** We have secured your obligations under this plan by taking a security interest (by way of a separate Security Instrument dated　　January 24, 2007　　) in the following property:
283 MIRAVISTA WAY, Vallejo, CA  94589

You may buy property insurance from anyone you want who is acceptable to us.

If all or any part of the property or any interest in it is sold or transferred without Lender's prior written consent, Lender may demand immediate payment of the secured debt. Lender may also demand immediate payment if the Borrower is not a natural person and a beneficial interest in the Borrower is sold or transferred. However, Lender may not demand payment in the above situations if it is prohibited by federal law as of the date of this security instrument.

**JOINT ACCOUNT:** If more than one person signs this Agreement, the obligations and liabilities of each shall be joint and several, and NFCU is authorized to make any Advance requested by any of you.

**CHANGING THE TERMS OF THIS AGREEMENT:** Generally, we may not change the terms of this agreement. However, we may change the terms in the following circumstances:
- If this is a variable rate plan, we may change the index and margin if the original index described above becomes unavailable. Any new index will have a historical movement similar to the original, and, together with a new margin, will produce a similar interest rate.
- We may make changes that you have agreed to in writing.
- We may make changes that unequivocally benefit you.
- We may make changes to insignificant terms of this agreement.

If we are required to send notice of a change in terms, we will send the notice to your address listed above. (You should inform us of any change in address.)

ADDITIONAL CHARGES: You agree to pay the following additional charges:

| | | | |
|---|---|---|---|
| Attorney Fees | $ 0.00 | Points | $ N/A |
| Appraisal | $ 12.00 * (POC) | Recording | $ 36.00 * |
| Property Survey | $ N/A | Title Search | $ 0.00 |
| Credit Report Fees | $ N/A | Title Insurance | $ 0.00 |
| Documentation Fees | $ 0.00 | Taxes | $ N/A |
| Recordation Tax | $ 0.00 | Flood Fee | $ 7.00 * |
| (Other) Settlement Fee | | $150.00 * | |
| (Other) | | $ | |

\* Denotes Paid by NFCU

MISCELLANEOUS CHARGES: You agree to pay and have charged to your Account certain additional fees. These fees include the following:

| | |
|---|---|
| Return-Check Fee | $ 20.00 |
| Stop-Payment Fee | $ 6.50 |
| Copies of Checks | $ 1.00 |
| (Other) N/A | $ N/A |

\*\*\*POC DENOTES PAID OUTSIDE OF CLOSING.

COSTS OF DEBT COLLECTION: You agree to pay all our costs, including reasonable attorney's fees and court costs, to collect this debt if you default on this obligation or become involved in any bankruptcy proceedings (to the extent permitted by law).

NOTICE: See the statement in this Agreement under the heading "YOUR BILLING RIGHTS" for additional terms and for information about your rights in the event of a billing error.

DEFAULT: You will be in default on this agreement if any of the following occur:
(1) You engage in fraud or material misrepresentation in connection with this plan;
(2) You fail to make a payment as required by this agreement;
(3) Your action or inaction adversely affects the collateral.

REMEDIES: We may terminate your account, require you to pay the entire outstanding balance in one payment and charge you a termination fee (if provided for in this agreement), and fees related to the collection of the amount owing, if you are in default in any manner described above. In that instance, we may take other action short of termination, such as charging you a fee if you fail to maintain required property insurance and we purchase insurance.

Even if we choose not to use one of our remedies when you default, we do not forfeit our right to do so if you default again. If we do not use a remedy when you default, we can still consider your actions as a default in the future.

SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT: We may temporarily prohibit you from obtaining additional extensions of credit, or reduce your credit limit if:
(1) The value of the dwelling securing this home equity line of credit declines significantly below its appraised value for purposes of this line;
(2) We reasonably believe you will not be able to meet the repayment requirements due to a material change in your financial circumstances;
(3) You are in default of a material obligation of this agreement, or any agreement securing this agreement, which shall include, but is not limited to, your ongoing obligation to supply us with information we feel we need to assess your financial condition;
(4) A governmental action prevents us from imposing the annual percentage rate provided for in this agreement;
(5) The action of a governmental body adversely affects our security interest to the extent that the value of the security interest is less than 120% of the home equity line;
(6) The annual percentage rate corresponding to the periodic rate reaches the maximum rate allowed under this plan (if provided for in this agreement); or
(7) A regulatory agency has notified us that continued advances would constitute an unsafe and unsound practice.

In the event that we suspend your right to additional advances or reduce your credit line, we will send you notice of our decision at the address listed on page one of this agreement. (You should inform us of any change in your address.) If we have based our decision to suspend or reduce your credit privileges on an assessment of your financial condition or performance under this plan, and you believe that your situation has changed, you must request that we re-evaluate your situation, and reinstate your credit privileges.

**TERMINATION OF ACCOUNT:** You may terminate this Agreement and the HOME EQUITY LINE Account upon written notice to NFCU at any time. NFCU may also terminate this Account as provided above. Any such termination by either party shall not affect the rights and obligations of either party as to Advances made prior to the time of such termination or your obligations under the Deed of Trust. Upon termination by either party you will be required to surrender to NFCU all HOME EQUITY LINE checks in your possession. NFCU's notice of termination must be mailed to your address last known to NFCU. Your notice of termination must be mailed to NFCU at P.O. Box 3327, Merrifield, Virginia 22119-3327.

**CREDIT INFORMATION:** You agree to supply us with whatever information we reasonably feel we need to decide whether to continue this plan. We agree to make requests for this information without undue frequency, and to give you reasonable time in which to supply the information. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**SIGNATURES:** By signing below, you agree to the terms of this agreement and you promise to pay any amounts you owe under this agreement. You also state that you received a completed copy of the agreement on today's date.

Signature _____ /s/ Michael _____ 1/24/07
MICHAEL P CORTEZ (Date)

☐ If checked, the signature(s) below was required as a condition of credit.

Signature _____ /s/ Antoinette Cortez _____ 1/24/07
ANTOINETTE CORTEZ (Date)

Signature _____ _____
(Date)

Signature _____ _____
(Date)

Signature _____ _____
(Date)

© 1983 Bankers Systems, Inc., St. Cloud, MN Form OCP-HE-CU-CA
1063226 (01-00)                Page 6 of 6                LOAN #:

## YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us In Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.

If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, share draft or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights and Our Responsibilities After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

## Home Equity Line
## Change of Terms Addendum

I/we hereby agree and acknowledge that the "FINANCE CHARGE" paragraph found on page 2 of the *Home Equity Line Truth-In-Lending and Agreement* is amended for my/our benefit during the first six (6) months after the Home Equity Line is closed to permit Navy Federal to offer an introductory interest rate of 6.500% Annual Percentage Rate (APR).

I/we further acknowledge the term for the introductory 6.500% APR will start on the loan closing date and continue for a full six (6) months. At the end of the six (6) month period, the APR will change to the current rate in effect for the quarter during which the six (6) months introductory 6.500% APR ends. That rate is equal to the "Prime Rate" (as published in the "Money Rates" section of the *Wall Street Journal* on the first work day of the calendar quarter) plus .750% in accordance with the terms specified in the "FINANCE CHARGE" paragraph in the *Home Equity Line Truth-In-Lending and Agreement*.

_____          1/24/07
Borrower Signature                 Date

_____          1/24/17
Co-Borrower Signature              Date

DOC #: 630413

## OPTION TO CONVERT ADDENDUM TO HOME EQUITY LINE
## TRUTH-IN-LENDING AND AGREEMENT

THIS OPTION TO CONVERT ADDENDUM TO HOME EQUITY LINE TRUTH-IN-LENDING AND AGREEMENT is made this 24th of January 2007, and is incorporated into and shall be deemed to amend and supplement the Home Equity Line Truth-in-Lending and Agreement made by the undersigned ("Borrower"), in favor of Navy Federal Credit Union ("Lender") and dated the same date as this Addendum (the "Home Equity Line Truth-in-Lending and Agreement"). The Home Equity Line Truth-in-Lending and Agreement is secured by a security instrument, as modified or amended, in favor of Lender dated the 24th of January 2007 (the "Security Instrument").

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Home Equity Line Truth-in-Lending and Agreement, Borrower and Lender further covenant and agree as follows:

1. **OPTION TO CONVERT TO A FIXED EQUITY LOAN**
   Borrower has agreed to pay according to the loan terms as listed in the Home Equity Line Truth-in-Lending and Agreement. However, unless Borrower is in default or this addendum will not permit it, Borrower has the option to convert their Home Equity Line to the rate and terms of a Fixed Equity Loan. Certain conditions must be met prior to exercising the Option to Convert. Those conditions are: (i) Borrower must give the Lender notice that they want to convert; (ii) at time of conversion Borrower must not be in default, in the Promotional Rate Period or in a Repayment Period under the Home Equity Line Truth-in-Lending and Agreement or the Security Instrument and the loan must be greater than six months old; (iii) by a date specified by the Lender, Borrower must pay the Lender a conversion fee of U.S. $150; (iv) Borrower must sign and give the Lender any documents the Lender requires to effect the conversion, and (v) the loan must meet other loan qualifications as set forth by the Lender. The rate and terms will be those in effect for the 6 to 20 year Fixed Equity Loan, based on the loans original loan-to-value, at the time the Option to Convert is exercised. Upon Borrower exercising the Option to Convert, the Lender will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal Borrower is expected to owe upon the conversion in full on the Maturity Date at the new fixed interest rate in substantially equal payments. The result of this calculation will be the new amount of Borrower's monthly payment. Beginning the Borrower's first monthly payment after the Option to Convert has been exercised; Borrower will pay the new amount as the monthly payment until the Maturity Date.

THIS ADDENDUM DOES NOT CONSTITUTE YOUR NOTICE TO CONVERT. THIS IS NOT A MODIFICATION AGREEMENT.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Option to Convert Addendum to Home Equity Line Truth-in-Lending and Agreement.

_____       1/24/07
Borrower Signature              Date

_____       1/24/07
Co-Borrower Signature           Date

DOC #: 690801

**NAVY FEDERAL Credit Union**          **JOINT CREDIT DISCLOSURE**

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_____          1/24/07
Borrower's Signature                          Date

_____          1/24/07
Co-Borrower's Signature                     Date

DOC#: 691010


**NAVY FEDERAL Credit Union**
P.O. Box 3301
Merrifield, VA 22119-3301

### Addendum to the Note

### REIMBURSEMENT OF CLOSING COSTS

Borrower(s): MICHAEL P CORTEZ and ANTOINETTE CORTEZ

Loan Number: 10935

Closing Date: January 29, 2007

Anniversary Date: January 29, 2009

Total Closing Cost: $285.00

In consideration of Navy Federal Credit Union paying the closing cost of $ 285.00 on the above referenced loan dated 01/29/2007, I (we), the undersigned, understand that if I (we) pay this loan off and close the account earlier than the two year anniversary date of the loan closing, we will be obligated to pay Navy Federal the full amount of the total closing cost for the loan. This amount will be added to any loan payoff amount requested prior to the 2-year anniversary date.

_____  _1/24/07_
Borrower                          Date

_____  _1/24/07_
Co-Borrower                       Date

DOC #: 620060

RECORDING REQUESTED BY
**Executive Trustee Services, LLC dba ETS Services, LLC**

AND WHEN RECORDED MAIL TO:
**Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**

T.S. No. **CA1100033956**
Loan No. ████6912
Insurer No. ████7078

SPACE ABOVE THIS LINE FOR RECORDER'S Use

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/07/2004. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: **MICHAEL PLANDEZ CORTEZ AND ANTOINETTE A. CORTEZ, HUSBAND AND WIFE AS JOINT TENANTS**
Recorded **10/28/2004** as Instrument No. **200400154788** in Book **XX**, page **XX** of Official Records in the office of the Recorder of **Solano** County, California
Date of Sale: **12/27/2011** at **02:30 P.M.**
Place of Sale: **At the Santa Clara Street entrance to the City Hall, 555 Santa Clara Street, Vallejo, CA 94590**
Property Address is purported to be: **283 MIRAVISTA WAY VALLEJO, CA 94589**

APN #: **0068-413-080**

The total amount secured by said instrument as of the time of initial publication of this notice is **$335,617.40**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

Date: **12/01/2011**   **Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
Sale Line: **714-730-2727**

**Ileanna Petersen, TRUSTEE SALE OFFICER**



7196 9006 9295 6287 7979

*EXHIBIT B*